IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DON JUN KIM and YOON SOON CHUNG, | ) ) ) |
| Plaintiffs, | ) ) ) |
| vs. | ) Case No. 08 C 5499 ) |
| JUN YOUNG PARK, HYUN JOUNG KIM, WAND DENTAL LAB CORP., and CENTRAL DENTAL LAB, INC., | ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Don Jun Kim and Yoon Soon Chung have sued Jun Young Park, Hyun Joung Kim, Wand Dental Lab Corporation, and Central Dental Lab, Inc., asserting violations of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 207; the Illinois Minimum Wage Law, 820 ILCS 105/1; and the Illinois Wage Payment and Collection Act, 820 ILCS 115. Defendants Park, Kim, and Wand Dental Lab have moved the Court to dismiss the claims against them.[1] The Court, with defendants' consent, converted their motion to dismiss into a motion for summary judgment with respect to plaintiffs' FLSA claims. For the following reasons, the Court grants the motion.

---

[1] The record does not reflect that Central Dental Lab has been served with summons. On April 15, 2009, the Court granted plaintiffs' motion to extend the time for service upon Central Dental Lab, through May 18, 2009. Plaintiffs have filed no return of service and have not, in the intervening month, sought a further extension of time.

1

**Background**

Because the defendants have moved for summary judgment, the Court views the facts in the light most favorable to the plaintiffs and draws reasonable inferences in their favor. See, e.g., Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co., 528 F.3d 508, 512 (7th Cir. 2008).

Dong Jun Kim and Yoon Soon Chung, who are husband and wife, are dental technicians who lived and worked in Korea before 2007. In late 2006, Kim and Chung responded to an advertisement in a trade publication of the Korean Dental Technicians Association. The ad solicited dental technicians for work in Wand Dental Lab in Chicago and offered assistance in obtaining the necessary visas.

In February 2007, Kim met with Jin Young Park to discuss the work referenced in the advertisement. Park is the husband of Hyun Joung Kim, the sole shareholder of Wand Dental Lab. Plaintiffs allege that Park told Kim that a work visa would cost Kim $65,000 and that Park would take care of the legal situation. Per Park's instructions, Kim opened a joint bank account with Hyun Joung Kim.

Kim returned to Korea to prepare, along with his wife, for the move to Chicago. While the plaintiffs were in Korea, Park told them to wire more money into the joint account, which they did. By the time the plaintiffs left Korea for Chicago, they had wired about $144,000 into the joint account. Plaintiffs allege that defendants wrongfully removed about $114,270 from the account without reimbursing them.

In late April 2007, Kim and Chung began working as dental technicians for Wand Dental Lab. Plaintiffs performed skilled work, fashioning dental prosthetic devices, including bridges and crowns, from materials such as Diamond HP Burs, opaque paste,

adhesives, and enamel.  These materials were ordered by defendants from out-of-state suppliers.  Plaintiffs used several pieces of machinery belonging to Wand Dental Lab to create the prosthetics.

Between May 1 and July 31, 2007, plaintiffs worked from 8:00 a.m. until 7:00 p.m., Monday through Friday, with a 30-minute lunch break each day.  They worked about fifty-two hours per week.  Kim was paid $2,500 per month and Chung $2,000 per month.  Between August 1 and December 1, 2007, they worked about sixty hours per week and were paid the same amounts.  Plaintiffs allege that they had no control over their work schedule, which was set by Park.

Wand Dental Lab sold prosthetics exclusively to dentists within Illinois during Kim and Chung's alleged employment.  Central Dental Lab sold prosthetics to some dentists outside Illinois.  Park took over the management of Central Dental Lab in late 2008 during the illness of its owner, Park's friend and neighbor.

**Discussion**

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  To determine whether a genuine issue of material fact exists, the Court must view the record in the light most favorable to the nonmoving party and draw reasonable inferences in that party's favor.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002).  A

genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The FLSA requires employers to pay a minimum wage to employees "engaged in interstate commerce" and to compensate such employees at one and one-half times the regular wage rate for time worked in excess of forty hours per week. 29 U.S.C. §§ 206(a) & 207(a). For the FLSA to apply, the employer must be a covered enterprise or the employees must be covered individuals, as defined by the statute. *Tony & Susan Alamo Foundation v. Sec'y of Labor*, 471 U.S. 290, 295 n.8 (1985).

**A.      Individual coverage—directly engaged in interstate commerce**

Plaintiffs contend they qualify for individual coverage because they were engaged in interstate commerce when they worked for Wand Dental Lab. The test under the FLSA "is not whether the employee's activities affect or indirectly relate to interstate commerce but whether they are actually in or so closely related to the movement of the commerce as to be part of it." *McLeod v. Threlkeld*, 319 U.S. 491, 497 (1943).

Plaintiffs contend that Wand Dental Lab was merely a resting point for materials shipped entirely from out of state before they were eventually sent to dentists elsewhere in Illinois. Were that the case, plaintiffs' activities at Wand Dental Lab might qualify them as having engaged in interstate commerce. The Department of Labor takes the position that the "[s]hipment of goods from another State direct to a customer located in the same State as the distributor who ordered the shipment, constitutes interstate commerce by virtue of which [ ] the distributor's employees who procured the shipment .

4

. . are covered by the FLSA as being engaged in interstate commerce." *Field Operations Handbook (FOH)*, Wage and Hour Division, U.S. Dep't of Labor, § 11i15 (1994).[2] Plaintiffs contend that their activities fit this description because they "extensively handled materials that were shipped from a foreign state to [their] employer," and they "participated in the distribution of goods received from foreign states to individual customers." Resp. at 11.

Alternatively, plaintiffs contend that their activities fall within the Department of Labor's definition of wholesaling. The *Field Operations Handbook* outlines three types of circumstances "under which goods remain within the channels of interstate commerce until delivered to the customer level" under *Walling v. Jacksonville Paper* Co, 317 U.S. 564 (1943). *FOH* § 11w08. Plaintiffs contend that their activities fall within each of the first two categories:

> (a) . . . The first group comprises those goods purchased by the wholesaler upon the order of a customer with the definite intention that the goods shall be carried at once to the customer.
>
> (b) The second group comprises those goods obtained by the wholesaler from the manufacturer or supplier to meet the needs of specified customers pursuant to some understanding with a customer even though not necessarily for immediate delivery.

*Id.* Plaintiffs contend their activities are covered under the FLSA "even though the goods were not necessarily delivered immediately." Resp. at 12.

---

[2] Although not entitled to *Chevron* deference, the Department of Labor's *Field Operations Handbook* has been held to be persuasive and entitled to some weight in judicial interpretations of the FLSA. *See Martin v. Occupational Safety and Health Review Comm'n*, 499 U.S. 144, 157 (1991); *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1275 (11th Cir. 2008). Both parties have cited the handbook. Each side argues that a different provision of the Handbook governs the case.

5

Defendants, by contrast, contend that plaintiffs' activities were akin to processing, which "generally interrupts the movement of goods in interstate commerce" so that individuals engaged in processing may not be eligible for individual coverage. *FOH* § 11p05. The determination of whether an activity constitutes processing "involves a number of factors, including the complexity of the operation, the change that is made in the goods, and the time required." *Id.* Activities such as "the mixing of materials to make concrete; . . . the blending of wines; the grinding or blending of coffee; [and] the dilution, pasteurization, clarification and homogenization of milk or cream" have been held to be processing. *Id.* Other activities, such as performing minor repairs to new cars and the blending of different grades of gasoline, have been held to be incidents to distribution, not processing. *Id.*

Defendants have the better of the comparisons. While arguing that they should be considered employees of the defendants, plaintiffs contended that several types of materials and equipment were necessary for their work in creating the dental prosthetics, including "opaque paste, base paste, adhesives, dentin, enamel, accelerator, waxes, dowel pins, porcelain oven, air compressor, and suction machine." Resp. at 7. They contend that most prosthetics required "approximately eleven steps to make," and that they were made in "assembly line fashion." *Id.* at 3. These descriptions severely undermine plaintiffs' contention that their activities are similar to those of workers in a distribution center or wholesaler. Plaintiffs were not simply re-packaging or shipping finished goods to customers for re-sale. Rather, they were fashioning products out of raw materials through a complex, multi-step process. Plaintiffs' work—as they describe it—requires skill, results in significant changes to the

6

goods, and takes time to complete. As such, it falls within the "processing" category, which is considered to interrupt the flow of interstate commerce. *See FOH* § 11p05 ("The test of what constitutes processing involves a number of factors, including the complexity of the operation, the change that is made in the goods, and the time required."). As a result, no reasonable jury could find that plaintiffs themselves were engaged in interstate commerce under the FLSA.

**B.    Individual coverage—producing goods for interstate commerce**

An employee may claim individual coverage under the FLSA if she is involved in the production of goods for interstate commerce. 29 U.S.C. §§ 206(a) & 207(a)(1). Goods are produced for interstate commerce "where the employer intends, hopes, expects, or has reason to believe that the goods or an unsegregated part of them will move . . . in such interstate or foreign commerce." 29 C.F.R. § 776.21(a). In this analysis, the focus is on the intended destination of the goods, not the origin of the materials used to make the goods.

It is undisputed that in 2007, the year plaintiffs performed work for Wand Dental Lab, the company sold dental prosthetics only to dentists within the State of Illinois. Because Wand Dental Lab is likewise located in Illinois, these sales alone cannot give rise to individual coverage for plaintiffs. Rather, plaintiffs contend that the out-of-state sales of Central Dental Lab should be imputed to defendant Park because he took over its management "during the relevant period." The evidence cited by plaintiffs shows, however, that Park took over Central Dental Lab's management in the fall of 2008, well after plaintiffs stopped working for Wand Dental Lab. Plaintiffs have failed to produce

7

any other evidence to support their contention that Park managed or controlled Central Dental Lab during 2007.

Plaintiffs also contend that the final customers of the dental prosthetics were the patients, not the dentists. Because it is unknown whether the patients ultimately lived in or traveled to other states, plaintiffs contend that there is a genuine issue of fact concerning whether the prosthetics were produced for interstate commerce. This argument fails, however, because the patients receive the prosthetics when a dentist installs the device, a procedure that occurs in the dentist's office. As stated earlier, all of Wand Dental Lab's prosthetics were sold to in-state dentists. Thus, even assuming that the ultimate customers were patients, not dentists, the prosthetics "reach[ed] the customers for whom they were intended" within the state of Illinois. *Jacksonville Paper*, 317 U.S. at 568.

The patients' possible subsequent travel to other states is immaterial. Otherwise, any worker who helped produce goods that are produced and sold wholly within one state would be subject to the FLSA simply because the ultimate customer might one day take the goods to another state. This would expand the FLSA beyond its terms, because it would include coverage for workers producing goods not intended to move in interstate commerce. *See* 29 C.F.R. § 776.21(a) (limiting the definition of goods "produced for" interstate commerce). In this case, no reasonable jury could find that plaintiffs were involved in the production of goods for interstate commerce.

**C.     Enterprise coverage**

An employer is a covered enterprise under the FLSA if it meets two requirements: (1) its employees are "engaged in commerce or the production of goods

for commerce" or "handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person," and (2) its annual gross volume of sales is $500,000 or greater. 29 U.S.C. § 203(s)(1)(A).

Although plaintiffs assert enterprise liability in their complaint, they state in their response that they "do not claim enterprise liability at this time." Resp. at 10. Rather, plaintiffs ask the Court to permit them to conduct further discovery on the issue of enterprise liability. They fail to articulate, however, what information might be uncovered after additional discovery that could tend to show that Wand is a covered enterprise. Defendants contend that Wand Dental Lab cannot be a covered enterprise because its 2007 tax return shows that its gross revenue for 2007 was $136,812. That figure is well below the $500,000 minimum under section 203(a)(1)(A). Plaintiffs have failed to show that further discovery would make any impact on this determination; specifically, they have offered no basis to believe that there possibly could exist information tending to show that Wand Dental Lab's actual revenues exceed its reported revenue by over 250 percent. In sum, no reasonable jury could find that Wand Dental Lab is a covered enterprise under the FLSA.

**Conclusion**

For the foregoing reasons, the Court grants the motion for summary judgment [docket no. 11] of defendants Park, Kim, and Wand Dental Lab. Summary judgment is granted in favor of defendants Wand Dental Lab, Park, and Kim as to Count 1 of plaintiffs' complaint. The remaining claims against these defendants are dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3). All claims against Central Dental Lab are dismissed without prejudice pursuant to Federal Rule of Civil Procedure 4(m).

9

The Clerk is directed to enter judgment in favor of defendants Park, Kim, and Wand Dental Lab Corp. as to Count 1 of the complaint and dismissing without prejudice all remaining claims.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: June 16, 2009